We'll move on to the third case of the day, Mathews v. REV Recreation Group, Appeal No. 18, 1982. We'll hear first from Ms. Wells. May it please the Court, my name is Elizabeth Ahern Wells and I represent the appellants Vanessa and Randy Mathews in this case. And this case is here as the result of a grant of summary judgment in favor of REV on all claims and all issues in our case. This case is about a defective 2014 Holiday Rambler presidential fifth wheel RV that was manufactured, distributed and warranted by REV and purchased at a REV authorized dealer in Pennsylvania and which REV failed to repair in a reasonable amount of time and a reasonable number of attempts. Evidence before the court revealed that there were problems from the very first day and each of the times that the appellants took the RV out for use, they had problems. In total, the RV had 24 different defects subject to repair. Counsel, let me ask you a question about what's left for repair. I mean, it seems like this RV has been a headache and a lemon, but for these purposes, what we're concerned with in the warranty is what REV knew and how many opportunities REV had to make good on the warranty. And I want to make sure I'm understanding that evidence correctly. As far as I can tell, looking at your clients took the RV to some other dealers, to Johnson's, et cetera. But REV had two opportunities to fix the DVD player, two opportunities to fix the bedroom TV, at least one to fix the AC. The cable slide out or the curbside slide out, I gather it fixed. So a lot of these other lingering problems, REV wasn't the one who had an opportunity to address it before, right? And then we're also left with the question of, has the warranty not fulfilled its essential purpose if what we have is the DVD player, the TV, and the air conditioning? Well, I'm going to attempt to address the question. So first, I think it's important to show under Anderson what REV knew, what REV knew about. So the plaintiffs followed the procedure in the REV warranty during the first two trips of advising the authorized dealer of the problems that they were having within the five days. And it wasn't until after those two times that they reached out to REV. REV was aware of the problems that they were having. They advised them to contact a local dealer and that the local dealer would then have to contact them and process the warning claim that way. But it didn't, right? Didn't the local dealer fail to do that? They did step one, but they didn't do step two. They did step one. Mr. Johnson's deposition revealed that he was in contact with REV regarding the repairs. So they were aware of the defects, but ultimately, and unfortunately, and out of something that my clients had no idea about, they were told something opposite. The warranty claim was not ultimately processed, but REV was aware of the defects going on. They continued to be aware of the problems and were on notice of them through multiple calls and then two separate letters, one by Mr. Matthews before he retained counsel and one on Mr. Matthews' behalf by counsel before the lawsuit was filed. I believe to the second part of your question, the current unrepaired defects would include the bedroom slide-out cable, which was a new problem, the DVD player, which was subject to repair twice, and the TV, subject to repair twice. The slide-out seals failing and coming loose, subject to repair twice at the REV factory. And the AC, which is kind of related to the slide-out seals failing, that was subject to repair as well on the last repair attempt. And then additionally, the latent defects relating to the water tank and the improper support for the water tank. I think that it's important to note that as far as opinions regarding the reasonableness of repairs goes, the only expert testimony before the court was the opinions of Mr. Bailey and no evidence before the court of any opposing opinions of any other experts. With regards to failure of the essential purpose, I think that goes to two separate issues in the case. I think that even if we take out the two, the first two repairs, I think we've presented enough evidence to go to a jury on the issue of whether there were a reasonable number of repair attempts or a reasonable amount of time to repair. Here we have two, if we take out the Johnson's repairs, we still have two times to the REV factory, 62 days in the repair shop. And Kenworth of Indianapolis and both Andersons say that they don't get an unlimited amount of time to repair defects. And we have expert testimony saying that some of the items were not repaired within a reasonable amount of time and that the entire repairs were unreasonable in their total duration. Let me ask you another question that relates to the implied warranty of merchantability. So your clients had the initial one-year warranty and then they had the extension. And then, I'm forgetting exactly when, May or June, May I think of 2015, then REV said, okay, we're going to give you a goodwill warranty for another year. And it says, to be administered under the same guidelines as the Monaco RV LLC warranty. I have a couple of questions about that, but my first question is, was that, is it your position that this goodwill warranty that was given in May of 2015 was an extension of the limited warranty that was already in place that they had granted in December, or that it was a new start similar to the initial one-year warranty that the RV had after purchase? Do you see what I'm saying? Yes, it would be our position that it was an extension. An extension of the one granted in December? Correct. Okay, well, that was a more limited warranty. I thought you were going to say, no, it was the equivalent of the first warranty, in which case you might've had an argument that it included the implied warranty of merchantability, because that warranty was clearly part of warranty one, but warranty two, your limited extension post-December, limited it and said it doesn't include other warranties. So I gather you just conceded that this May 2015 warranty does not reactivate, it's not a new, the first warranty. It's my understanding that in both instances, the REV representative said, we're extending your warranty. But then in each instance, they wrote a letter saying, it's not an extension of the warranty, it's just goodwill under the terms of the warranty. So I think the argument would be the same for each one. So our position is that what was told to Mr. Matthews is what would control. But if not, I think we still have enough evidence before the court on the breach of implied warranty to get to a jury. Mr. Bailey determined that the RV was uninhabitable because of the air conditioning and furnace inability to either keep up or keep the RV warm because of the improper slide outfitting and those related issues, which were subject to repair during the warranty. And also that it was not fit for its ordinary use at the time of delivery because of the water tank support system defects. Additionally, this RV, they only got to use it and take it on three trips, which totaled about six total days. And each time they used it, they had a serious issue with the RV. While even if we take the trips to Johnson's as not under the warranty, that doesn't escape the fact that REV built this RV and it was just defective throughout from beginning to end. When did the water tank problem first manifest itself? When did it become apparent to the Matthews? I believe... So in May of 2016, Mr. Matthews refilled the water tank and then a couple, well, about two months later, he noticed that the cabinets were like pulling apart and he took a level and noticed that the floor was leaning. But it wasn't until it was inspected by Mr. Bailey that he realized that it was the result of the support system not being sufficient. Has REV had an opportunity to address that issue? They have not. They haven't. Okay. So if we go with what you were... We think about the case along the lines that you were just talking about, that we set aside the attempts with Johnson. Do you agree that as a matter of Indiana law here that the defendant does have a reasonable opportunity to cure, that that legal right exists or are you contesting that? I think under Anderson, they have the right to cure if their warranty says it for an express warranty. Right. But I think that just the notice alone, which I walked the court through briefly... The warranty here does provide a cure provision, right? Correct. So they do. And then so doesn't that... They do have a reasonable opportunity to cure, to repair, and the vehicle has been back there twice, correct? Correct. And I know that we're not, that the case is not subject to Indiana's Lemon Law. And I think the reason for that is because this RV weighs more than the pound limitation in the Lemon Law, weighs more than 10,000 pounds. So the Lemon Law doesn't apply. But is it fair for us in figuring out as a legal matter and considering the facts here, what is a reasonable opportunity to repair? How many times is reasonable? The Lemon Law puts that at four. Is that an appropriate consideration just as an informative reference or is it not? I don't think that it is. I think that, first of all, under Indiana law, under the holding in Anderson, I think that opportunity to cure just means they're on notice of the issues. And as I said, the phone calls, the letters, the phone calls not only between Mr. Matthews and Rev, but also between Mr. Johnson and Rev provided sufficient notice of all of the issues aside from the latent defects, which they were not aware of. With regards to what a reasonable opportunity is, I think... Anderson's a much more extreme set of facts, is it not, as far as reasonable opportunity? I don't think it's necessarily a more extreme set of facts. I think that the duration of time is pretty equivalent and also... Time, but what about the opportunities to repair? Gulfstream had that RV in that case several times. A point that we emphasized in our opinion. I think it's also important to note that it was also emphasized that the wait for two months was too long. The Matthews alone had to wait for two months to even get that RV in the shop. They were discussing the repairs in March. Rev didn't even get it in until they picked it up on May 1st and it was in for 56 days after that. Additionally, in Anderson, I believe that Gulfstream offered to resolve the issues immediately before suit, yet the Andersons filed suit. Here, the Matthews attempted to resolve the issues immediately before suit was filed and there's no evidence in the record that Rev ever responded. If you look at that letter, that last letter from Rev, they also indicated in there that they were willing to entertain resolution of the matter if the second repair didn't work. They were aware that that second repair didn't work at the time that the lawsuit was filed. I also think that the portion of the government in control over MagMoss and the regulations, they have not spoken to say what is reasonable and there's no bright line rule under MagMoss. I think that's because, well I know it's because of the case law that says that that's an issue of fact to the jury. The jury is entitled to hear the facts in this case and reach a conclusion on what they think is reasonable. Also, we are the only party that had expert testimony on the issue and that was unopposed at least at the summary judgment stage. Okay, thank you counsel. We'll next hear from the defense, Ms. Huneshagen. Thank you, your honors and may it please the court. As we get going, I'd really like to dive into the facts because I believe that they are a little bit confusing in this case, but I also believe that as you narrow them down, they can really boil down to seven issues that are at issue in this case and which can form a breach of the express or an implied warranty. Of those seven issues, appellants admitted within their briefing that four did not manifest themselves during the limited warranty period, were never presented for repair, and that REV was not given a single attempt to correct those issues. Providing an opportunity for repair is a necessary element for both the breach of the express and implied warranty. That leaves only three defects that can remotely form the basis for a breach of warranty. Those defects are an inoperable DVD player, an inoperable TV, and an alleged malfunctioning air conditioner that cannot cool as efficiently as the appellants would like. Would those have come within the warranty or would those have been separately warranted by their own manufacturers? That is one of our arguments, your honor, is that they are not covered pursuant to the terms of the express warranty. There is a non-exhausted list contained within the warranty and it expressly names the air conditioner and the TV as excluded. Right. The air conditioner issue looks like it's really a manufacturing issue with the slide outs, right? The slide outs, just so I understand, we all understand this, are the features that provide extra floor space when you've actually parked the vehicle, correct? Yes, your honor. The issue that appellants have argued in this case is that the seals that go around the slide out do not properly seal. So it's not a question of the air conditioner failing to perform as designed. Its manufacturer would say it's doing exactly what it's supposed to. The problem is the seals that open up the interior to the exit to the outside world, right? Correct, your honor. So that's a pretty big deal. You can't just lay off on the air conditioning manufacturer. I agree, your honor, with that sentiment, but I also believe that it boils down to the fact that REV was not given a reasonable opportunity to correct that issue. On the times that anything was presented regarding the air conditioner, the first attempt, there was nothing, there was no mention of the air conditioner. It was at REV, the appellants mentioned that there was an issue with the slides not properly deploying. They replaced the seals. You guys didn't figure that out the first time at the factory, that there were problems with the slide outs and the seals? They corrected that issue. And it was never, Mr. Matthews never again presented the issue with the seals to REV or raise that issue for repair again. The second issue with the air conditioner essentially came back that, oh the air conditioner doesn't seem to be cooling as it properly is, and there was no mention of the seals. So REV... How would the plaintiff owner have any know to mention the seals? I mean but I would definitely know that it's not, that the vehicle is not cooling down as it's intended. Isn't that the whole point of taking it in? I agree. That the manufacturer should figure that out? It is your honor, but if the appellants or the customers come in and they don't complain that the air conditioner is not cooling as it properly should, and it's in Indiana in December, the air conditioner is not running, there's no way for REV to understand or realize that the air conditioner is not working as it should. And that issue was, and as I stated previously, the issue of the seals was never again presented to REV, and the issue of the air conditioner not cooling was presented once, it was repaired, and then REV did not again hear from Mr. Matthews until this lawsuit was filed. No, this was presented twice. I thought the AC, it's just the once? I think there's confusion over whether or not the seals constitutes a presentation of the issue with the air conditioner, or whether or not it's just an issue with the air conditioner. I gotta say, what Judge Scudder said made a lot of sense to me, that as a customer, you just said, look, this is not cooling the way it should. We live in wet Virginia, and it's up to you guys to figure out what's wrong. Did I understand correctly, Ms. Hunneshausen, that your contention is that the water tank problems are a design defect? It is, Your Honor, but I believe that we don't even... Are all of your clients' products defective in that way, or just this model? They're not, Your Honor. So what's going on with the design defect theory? So the issue, I believe, it becomes an issue of, we don't even necessarily need to get to whether or not it's a design defect, because that issue was not presented for repair during the warranty period. If it had been, our argument is that this was not a warrantable issue, because it is not an issue of the workmanship of the RV. Plaintiff, appellant... Your theory is that your client's product is defectively designed? This is an astonishing response to a warranty claim. Your Honor, it comes down to, I believe, that appellant's own expert testified that this was a design defect. And again, this was not presented to REV for any single repair attempt. The issue did not even arise... Would you be willing to look at it now? What was that? Would you be willing to look at it now? I believe that it's kind of too late in the game. We're in the middle of litigation, and it's past the repair test. So you're instead taking the public position that your products are defectively designed and will fall apart when the water tank is full. Is that right? That's not right, Your Honor, because there's a lot more to the water tank issue. There was testimony presented during Mr. Matthews' deposition that the water tank was filled upon its return from REV, and then the water tank froze because it was not winterized after he did that. And within that testimony, and within our expert testimony, it's believed that the supposed to winterize the water tank. Is that something that the owner is supposed to take care of? It is, Your Honor. The RV was returned in May, and once REV returned the RV in May, they assumed that Mr. Matthews was going to continue to use the RV. He lives in Virginia. We did not, again... How do you winterize the water tank here? Your Honor, I'm not an expert. In winterization, I believe it involves pretty much draining the water, putting some antifreeze in the tank. This is for drinking water, right? It is. As I said, Your Honor, I'm sorry. I apologize. I'm not positive exactly how you winterize an RV. I don't have one myself, but it does involve removing the water from the tank, putting some type of solution in the tank to prevent it from freezing. Aren't you supposed to be able to use this vehicle in the winter? Some RVs are designed to be used in the winter, and they have heating elements for water tanks. Does this one? I don't believe so, Your Honor. Counsel, this is related to the merchantability issue then. Can you describe to me your position on whether the initial extension in December and then the second extension in May, or the grant of this goodwill warranty encompassed within it merchantability? It did not. The extensions that our RV provided to Mr. and Mrs. Matthews were explicitly stated in two separate letters in which we agreed that we would provide goodwill repairs, which are also addressed within the express warranty, but that was not an extension of the limited warranty. Who is Monaco RV LLC? Because these warranties, I mean, we have all these entities flying around, and this warranty says under the same guidelines as the Monaco RV LLC, but they didn't... I mean, is that a predecessor company? It is, Your Honor. So there's been a couple. I believe the original warranty was under Navistar, but it hasn't been in dispute with that, and RV is not disputing that they are the current party in interest. Your Honors, and I'd really like to stress the point that in this case, it comes down to an issue of three specific defects that are at issue, and those issues are the DVD player, the TV, and the air conditioner. Nothing else was presented within the warranty period. Once our RV had the unit at the factory on only two occasions, the first occasion was in December, Mr. Matthews himself testified that following that repair, everything that had been presented was corrected. When Mr. Matthews came back to us in March and said, you know, I'm still having issues with my RV, REV agreed to not only bring the RV back into the manufacturer, they paid for Mr. Matthews, they paid for the transportation to RV, to Indiana, they paid... This was the driver who had the accident? There was. He was driving out of the plaintiff's driveway? There was, Your Honor. It is my understanding that there was a median right outside Mr. Matthews' home, and they did cause damage, of which all they repaired. There was no dispute. They did not cover that, any of that, of the body damage caused to the RV, and Mr. Matthews has not raised that as an issue in this lawsuit. So REV picks up the RV, brings it back to Indiana. At their cost, they pay for Mr. Matthews to come back out to the Indiana factory and look at the repairs. They pay for Mrs. Matthews to fly out to Indiana and look at the repairs, and he states that everything is repaired, and we don't hear from him again. What do you say to Ms. Wells' position that notice was enough, that they called REV and said, this is what's going on, and even though REV didn't have the opportunity to correct some of these problems, that they put REV on notice? Are you talking about before or... I'm talking about when Ms. Wells just now in court said, well, when they had these initial problems when they were in the road, and they called REV, and REV said, you can take it to another manufacturer, et cetera, that she said, it doesn't matter, essentially, that REV only had one or two repair opportunities for some of these defects. It goes beyond the TV, DVD player, air conditioner, because REV was on notice of the other issues. I disagree with that entirely. Under the limited warranty, it's not just notifying the manufacturer that there's an issue, which is even a question in this case, whether or not REV was notified. The manufacturer has to be notified of the defect, and the RV has to be presented for repair. On Mr. Matthews' first outing, the evidence in the record establishes that he did have some issues with the RV, but he never once presented the RV for repair immediately following that. He called the local dealership that he had purchased the RV from. He said, I'm having issues. Mr. Matthews is apparently a handy guy. They gave him some advice how to handle it. REV was never once notified that there were any issues with the RV, and the RV was not taken in for repair. Hold on. I thought REV did know that it went to Johnson's. I thought that Johnson's just didn't properly follow up as they were supposed to. Johnson's RV was the second repair attempt. The issue is there is that Mr. Matthews contacted REV and requested that he have repairs performed under the warranty. He had an issue finding a local dealership. Tina from REV advised him, you can bring the RV into any dealership. The issue you're referring to was when plaintiffs called the folks that she suggested and they said, this is a piece of junk and we don't repair those anymore? That's according to Mr. Matthews' testimony. Once he notified REV that there was no local dealership, they were willing to work with him and they were willing to say, all right, since there is no dealership within your area, why don't you go ahead and bring it to a dealership of your choice? Just know that before they can perform repairs, they need to contact REV and they need to get pre-approval for all the warranty repairs. That never happened. Ricky Johnson presented no testimony that he contacted REV at any point in time. I think what Judge Barrett's question is getting at though is from the owner's standpoint, the plaintiff's standpoint here, aren't they going to assume they're going to make whatever calls they need to make to the manufacturer to get approval to do repairs? The owners have dropped it off at Johnson's. They know that Johnson and Johnson's and REV are in contact with one another. Why shouldn't the owner just assume they're going to make whatever calls and get whatever paperwork they need to get? Your Honor, I don't believe that Mr. Matthews necessarily knew that REV and Johnson's was in contact with each other. REV told Matthews that Johnson's needed to secure pre-approval. Matthews said that to Johnson because presumably he wants to make sure Johnson's not going to charge him, that REV will cover it. I think what Judge Scudder's saying is he drops it off. He doesn't know the inner workings. He says, you need to get pre-approval from REV and he walks away and he assumes that Johnson's done that. Because Johnson's more local, right? Yeah, that's why Johnson's too. Where's this? This is in Decatur, right? So Johnson's is somewhere... No, no, no. The manufacturer. Correct. Yeah, it is in Decatur. So they don't want to go from Virginia to Decatur, Indiana. They'd rather go to Johnson's. That's how this all starts. It is, which is exactly why REV was willing to work with them on an unauthorized repair facility to get these repairs performed. We wanted to live up to the terms of the limited warranty, which I believe we did because we had only two repair attempts to repair this RV at any given time. If we count the trip to Johnson's though, the case gets a lot harder for you. I don't believe that we can count those repairs to Johnson's because REV was not notified that the RV was at Johnson's. Mr. Matthews never once said this is specifically where the RV is going to be. He simply provided, all right, well I'll bring it into a dealership of my choice. And again, your honors, I really want to get to the point of there was no breach of express warranty here, and I believe there is no breach of the express warranty because REV was not provided a reasonable number of repair attempts. Magnuson Moss specifically states attempts, which is multiple. We had only two repair attempts in this case, so we would ask that the court uphold the lower court's ruling of entry of summary judgment for REV. Thank you very much, Ms. Hunnis-Hannigan. One minute of, how much time is left? So go ahead and take a minute of rebuttal. Ms. Wells? Thank you. Just as quickly as possible, at page 17 of my appendix, the decision is listed there and it quotes from Ricky Johnson's deposition. He says he first called the factory about doing the warranty work on there, and they said they needed an estimate for repairs. So he was in communication, and he advised them- And which of the repairs sought from Johnson's the first time remain unaddressed now? Curbside slide cable, is that fixed now? The defects from that original- Well, if we count that, I mean, so we started out by talking about the TV, the DVD player, and the air conditioning. And if you count the Johnson's, what else adds to that list is something that REV had multiple opportunities to repair? I believe it would be the DVD player and the TV, and then the slide-out cable. So the curbside slide-out cable remains broken? No. Well, there's an issue with the slide seals, but the bedroom slide-out cable is broken. Okay. But that wasn't presented to Johnson's? That happened later? The bedroom happened later. The bedroom happened later. Yes. So the converters were fixed. The converter, the fuse blowing problem, that was fixed. Yes. And bedroom and curbside are opposite? Correct. Thank you. Okay. And then there was a question about winterizing. He filled the tanks in May in Virginia, and he noticed the issues with the water tank in July. So I don't think that that was a result of the water tank freezing. Additionally, I think it's really this issue relating to the backup remedy. I think the two strongest arguments on that, and the reason that the arguments for REV fail are that the warning failed of its essential purpose, and it was impossible for the parties to have agreed that this was the sole remedy because there was no meeting of the minds. Okay. I think those are addressed officially in the briefs. We'll take the case under advisement. Thanks to both counsel.